## W. S. Jones v. The State.

1. Practice in the Court of Appeals.— The jury being the judges of the weight of the evidence and the credibility of the witnesses, a conflict in the testimony is not sufficient cause for the reversal of a conviction which is sustained by the evidence for the State.

2. Aggravated Assault by Husband on Wife.— Note the state of conflicting evidence on which is sustained the conviction of a man for an aggravated assault upon his wife, though she used the first force.

Appeal from the County Court of Cooke. Tried below before the Hon. J. P. Hall, County Judge.

Appellant was found guilty of aggravated assault upon Barbara A. Jones, his wife, on June 25, 1880. A fine of thirty dollars was the punishment assessed against him.

The *casus belli* was a cooking-pan, and the kitchen was the field of battle. The casualties were greatest upon the side of the wife, but she held the fort and the trophy. She, too, was the chief *racontour* of the engagement, and her account of it is so spirited and graphic that no improvement upon it is attempted. It is as follows:

"My name is Barbara A. Jones, and I am the wife of defendant, W. S. Jones, and was living with him at the time of the difficulty. I resided in Cooke county, Texas, on June 25, 1880, and in the morning of that day, after getting up, I went into the kitchen and there saw defendant sifting meal. I took hold of the pan and told defendant to let it loose, when he struck me with his fist, grabbed me by the hair of the head, and jerked me down on the hot stove (at which time he bruised my knee), hit me on the head with a plank and then pushed me out of the door backwards. He bruised my eye and my face in the temple; these bruises were on me when I went to Mr. Lindley's that morning. When he pushed me out of the door I got up at once, went back into the kitchen, put on bread, and went over to Mr. Lindley's."

On cross-examination she stated that her mission to the kitchen was to get breakfast. Defendant and his brother were both in there. Defendant was sifting meal, but did not have it ready for cooking; he had not put the butter-milk in it. Elaborating her testimony in chief, the witness proceeded: "I walked up to the table and took hold of the pan and said, 'give me that, for I am going to get breakfast myself,— it's my place to get breakfast.' At this time the defendant had hold of the pan. I endeavored to take the pan away from him; and when I tried to take the pan away from him he struck me in the face with his fist. I held on to the pan. He then pulled me down by the hair of the head, hit me over the head with a plank, pushed me down on the hot stove, and shoved me out of the kitchen backwards. I got up instantly and went back into the kitchen, took up the pan, sifted the meal and put on the bread. When I went into the kitchen the second time, my husband went out of the kitchen into the house. I did not cook breakfast that morning. After I put on the bread I went into the house and said to my husband, 'I told you I was going to put on bread. I have done it; now I am going to leave.' While in the house I got my bonnet, put it on, locked one door of the house, and was locking the other when my husband came to me and told me not to lock up the house. Defendant was then on the outside of the house." At this point, the defendant's counsel asked the witness how she expected her husband to get into the house if she locked the doors. She replied that he could stay in the kitchen, though there was no bed there, and it was not used as a sleeping apartment; but he could sleep at his father's. Witness admitted that she had stated, some weeks after the difficulty, that she hurried over to Mr. Lindley's for fear her husband would overtake her, get her in a good humor and persuade her to go back. But she denied stating that she was to blame, or that but

for her brothers there would have been no prosecution and she would be living with her husband.

Two or three other witnesses for the State testified to the bruises mentioned by Mrs. Jones.

D. L. Jones, a brother of appellant, was the first witness for the defense. He was present when the conflict commenced and until it closed. He was grinding coffee and the defendant sifting meal, when Mrs. Jones came in and said, "get out of here, you dogs," grabbing with one hand the meal-pan, and striking the defendant with the other. As she struck at the defendant a second time, he slapped her with his open hand. Then they scuffled all over the house, each trying to get the pan away from the other, and each repeatedly pushing the other to their knees. During the scuffle they fell against a bench, a table and the stove. Finally, the lady got the pan and put on the bread, and after that she went into the house and said to the defendent that she had told him she was going to put on bread, and she had done it, and was then going to leave. She then was locking up the house, and defendant told her she must not do it.

On his cross-examination the witness said that he and defendant were not in the habit of getting the breakfast. When Mrs. Jones came in and said, "get out of here, you dogs," witness got out and stood on the outside and in front of the door, but while the scuffle was progressing between defendant and his wife witness went in and put a hand on each of them and told them to quit. Mrs. Jones said to witness, "Let us alone, and go out of here;" with which admonition the witness, who was obviously a sensible man, instantly complied. Defendant slapped his wife but once, and then not hard enough, witness thought, to bruise her. The witness denied certain outside remarks imputed to him. With respect to them, and to the self-contradictory talk imputed by the defense to Mrs. Jones, it suffices to say that testimony in support of the imputation was adduced.

*W. H. Daugherty* and *Davis & Garnett*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WINKLER, J.   Agreeably to the testimony the appellant and his wife, in the early morning, got into an angry contest over a pan used for mixing up dough for making bread.   The husband entered the kitchen in advance of the wife, and had possession of the pan when the wife, the alleged assaulted party, entered the kitchen and endeavored to take the pan from the appellant.   A scuffle ensued, in which the wife succeeded in getting possession of the pan.

The jury were in effect instructed, among other things, that the defendant had the same right to repel the attacks of his wife as if she had been a man, and that, unless he used greater force than was necessary to overcome the force employed against him, the jury should find him not guilty.   There was conflict in the testimony.   The testimony on the part of the State, if true, showed enough to sustain the verdict, whilst that offered on the part of defendant tended strongly to prove a good defense.

There was testimony offered to impeach the statements of the prosecuting witness, and some in her support. The weight of the testimony and the credibility of the witnesses was properly submitted to the jury for their determination.   This was the peculiar province and duty of the jury.   They having decided the case in favor of the witnesses for the prosecution, their verdict must stand.   We have no legal right to disturb a judgment when the evidence is conflicting and there is testimony to support the verdict.   The judgment must be affirmed.

*Affirmed.*